UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. C 08-05469 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| SERGIO SANTANA GUZMAN and BESAG, INC., d/b/a SANTANA BAR & GRILL a/k/a TACOS SANTANA, | **Re: Motion for Default Judgment** |
| Defendants. / | |

Plaintiff J&J Sports Productions, Inc. ("J&J") brought this action against Sergio Santana Guzman and Besag, Inc. ("Besag"), doing business as Santana Bar & Grill a/k/a Tacos Santana (collectively "defendants"), alleging violations of the Communications Act, 47 U.S.C. sections 605 et seq. and the Cable and Television Consumer Protection and Competition Act, 47 U.S.C. sections 553 et seq., as well as tortious conversion. Defendants have not appeared before this court. Now before the court is plaintiff's motion for default judgement. Having considered the matter submitted on the papers, for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiff is an international distributor of sports and entertainment programming. Plaintiff purchased the domestic commercial exhibition rights to broadcast the December 8, 2007, *"Undefeated": Floyd Mayweather, Jr. v. Ricky Hatton WBC Welterweight Championship Fight Program* ("Program"). Plaintiff's proprietary rights include the right to broadcast the main fighting event, the under-card fights (preliminary bouts which occur before the main fight), televised replay,

and any fight commentary that accompanied these fights.  J&J granted sub-licenses to Californian commercial entities for the right to publicly exhibit the Program for the benefit and entertainment of their patrons.

J&J, concerned that other commercial entities were illegally intercepting and displaying the Program, hired auditors to visit various commercial entities that were not licensed to broadcast the program to ascertain that these entities were not broadcasting the Program.  Gagliardi Dec., Docket No. 12, ¶ 6.  At approximately 8:22 p.m. on December 8, 2007, auditor Gary Gravelyn, ("Gravelyn") was at defendants' commercial establishment Tacos Santana, located at 2491 Mission Street, San Francisco, California, 94110.[2]  Gravelyn Aff., Docket No. 10-4.  Gravelyn observed that defendants were broadcasting one of the Program's under-card fights on four television sets.  Id.  Gravelyn could not see a cable box, nor could he locate a satellite dish.  Id.  He also performed a headcount, recording between forty-two and forty-nine people present in defendants' establishment, which could hold approximately one hundred people.  Id.

Plaintiff filed suit on December 5, 2008.  Defendants were served on February 12, 2009.  Executed Summons, Docket Nos. 6 & 7.  Guzman received the summons personally.  Executed Summons, Docket No. 7.  Besag received the summons through service on Guzman, the president and secretary of Besag.  Executed Summons, Docket No. 6.  Because defendants did not respond within the requisite twenty days, default was entered on March 11, 2009.  Clerk's Entry of Default, Docket No. 9.  This motion for default judgment was filed thereafter.  Application for Default Judgment, Docket No. 10.

LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  A default judgement may be entered upon application to the court.  Fed. R. Civ. P. 55(b)(2).  Generally, upon an entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except those relating to the amount of damages.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).  The factors the court may consider in

1  ruling on a motion to enter default include: the substantive merits of plaintiff's claim; the sufficiency
2  of the complaint; the amount of money at stake; the possibility of prejudice to plaintiff if relief is
3  denied; the possibility of dispute as to any material facts in the case; whether default resulted from
4  excusable neglect; and the strong policy of the Federal Rules of Civil Procedure favoring decisions
5  on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

DISCUSSION

Plaintiff requests $50,000 from defendants for alleged violations of 47 U.S.C. sections 605(e)(3)(B)(iii) and (c)(ii), $50,000 for violations of 47 U.S.C. sections 553(b)(2) and (c)(2)(c) and $2,000 for tortious conversion, for a total of $102,000.00 in damages.

I.    Counts I and II—Violations of Sections 605 and 553

"The Federal Communications Act, 47 U.S.C. sections 605 et seq., prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." J&J Sports Prods. Inc., v. Cortes, 2009 WL 801554, at *2 (N.D. Cal. 2009) (Breyer, J.).  The Act allows awarding actual or statutory damages of between $1,000 and $10,000 for each violation, as the court sees just.  See 47 U.S.C. § 605(e)(3)(C)(i)(II).  For violations "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award an additional $100,000.  47 U.S.C. § 605(e)(3)(C)(ii).

The Cable and Television Consumer Protection and Competition Act, 47 U.S.C. sections 553 et seq., provides a similar cause of action to section 605 for interceptions which occur via a cable system.  A court is allowed to grant statutory damages of between $250 and $10,000 for each violation, as the court sees just.  See 47 U.S.C. § 553(c)(3)(A).  Similar to section 605, a court is allowed to impose up to $50,000 in damages for willful violations.  47 U.S.C. § 553(c)(3)(B).

As a preliminary matter, it is not clear whether plaintiff is alleging that the single violation complained of here was a violation of section 605 (for satellite broadcasting) or section 553 (for cable signal broadcasting).  It seems obvious, however, that it cannot be both.  The court is unpersuaded that a perpetrator would commit double piracy by using both a cable box and a satellite to broadcast a single simultaneous program.  Furthermore, Gravelyn stated he saw neither a satellite

3

dish nor a cable box. Given that a cable box is more easily hidden, the court finds that defendants violated section 553, but not section 605.[3] See J&J Sports Prods. Inc. v. Man Thi Doan, 2008 WL 4911223, at *3 (N.D. Cal. 2008) (Whyte, J.) (finding that a single broadcast could not violate both codes and holding section 553 the more likely violation.). Accordingly, damages are awarded only for cable signal piracy under section 553.

With respect to the above referenced factors, there is both substantive merit and a sufficient complaint to support plaintiff's section 553 claim. Plaintiff has provided an affidavit attesting that defendants were broadcasting the Program to which they did not have a license to broadcast. Furthermore, there is a sizeable amount of money at stake, and plaintiff would be prejudiced if defendants were allowed to broadcast the Program for free and usurp plaintiff's rights as the exclusive licensed distributor of television rights for the Program. Finally, default here has not resulted from excusable neglect, as evidenced by defendants' continued failure to make any appearance in this action, and the Federal Rules of Civil Procedure support a decision on the merits. See Eitel, 782 F.2d at 1472 (excusable neglect is only warranted when defendant had a cause for neglecting to file a timely response to the complaint.) While there may be some dispute as to the material facts of the case, specifically whether defendants used a cable box or satellite to perpetrate this violation, this uncertainty does not alter the conclusion that plaintiff is entitled to judgment. Accordingly, default judgment is awarded to plaintiff.

A. Amount of Damages

The court must determine the amount of damages that should be awarded to plaintiff. Plaintiff urges for the statutory maximum plus an enhancement for willful violation. However, "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight," maximum statutory damages are inappropriate. Don King Prods. v. Maldonado, 1998 WL 879683, at *1 (N.D. Cal. 1998) (Orrick, J.), citing Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997). Plaintiff has cited no particularly egregious circumstances here.

The court is mindful that deterrence of future transgressions is an important factor in this type of litigation. Accordingly, the court finds the minimum statutory damage award insufficient in this case. J & J has introduced evidence to suggest that there were over forty patrons in attendance

4

and four television sets showing the fight. Defendants' establishment is commercial and a damage award would have a deterrent effect on defendants' future unauthorized conduct for commercial advantage. The court finds a statutory damages award of $4000 an appropriate sum. This amount should be sufficient to deter defendants from such conduct in the future, given that this amount is twice what defendants would have had to pay plaintiff to properly commercially license the event. See Gagliardi Dec., Exh 1 (cost of license for commercial establishment seating up to one hundred persons was $2000).

Plaintiff also requests a damages enhancement for willfulness. Plaintiff argues there is no way to violate the statute without a willful intent to broadcast a program to which a party does not have rights and that defendants' willfulness is further evidenced by a second suit, filed by a different plaintiff distributor against defendants. See Docket for KingVision Pay-Per-View, Ltd. v. Guzman et al., No. 09-00217 (N.D. Cal.) (Breyer, J.) at Docket No. 1 (Complaint). Plaintiff concludes that defendants have repeatedly, wilfully broadcast programs to which they do not have the rights.

The first argument for a willfulness enhancement is unavailing. If mere violation of section 553 were per se willful, then there would be no difference between statutory damages and any willful enhancement. As to the second action, the subsequent alleged violation occurred on January 19, 2008, and the complaint was filed on January 19, 2009. See Docket for Kingvision Pay-Per-View, Ltd. v. Guzman et al., No. 09-00217 (N.D. Cal. 2009) (Breyer, J.) at Docket No. 1 (Complaint). Both the alleged violation and the action based thereon occurred after this complaint was filed but prior to defendants receiving notice of their illegal behavior in this action. Although ignorance of the law is never a defense, section 553 nonetheless authorizes reducing the statutory minimum when the defendant was ignorant of the law. See 47 U.S.C. § 553(c)(3)(C). Accordingly, the court is inclined to award an enhancement only when actual knowledge of the law was evident, as would be the case in all future actions and as should be noted by plaintiff therein.

II.   Count III—Tort of Conversion

Plaintiff has failed to provide any showing in its declarations which would entitle it to an additional $2,000 worth of damages over and above those facts alleged for federal statute violations.

5

1  No damages shall be awarded for this third count because J&J has provided no evidence to support
2  its request for damages over and above those awarded for violation of section 553.

### III. Attorneys' Fees and Costs

Although plaintiff repeatedly states its request for attorneys' fees and costs throughout its application papers, there is no specific requested amount for attorneys' fees or costs, nor any declaration to support such a request. Absent such a declaration, the court has no basis upon which to grant attorneys' fees or costs. Plaintiff has thirty days to submit a declaration in support of its general request for attorneys' fees and costs. Failure to do so will result in no fees or costs award.

### CONCLUSION

Plaintiff's application for default judgment is **GRANTED**. Judgment shall be entered in favor of plaintiff in the amount of $4000 in damages against defendants.

Plaintiff is granted leave to file a declaration, and proposed order, outlining the costs and attorneys' fees incurred with respect to bringing this motion within thirty (30) days of this order.

IT IS SO ORDERED.

Dated: April 15, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. All facts are drawn from the Complaint, Docket No. 1, unless otherwise noted.

2. While the complaint refers to the establishment as Santana Bar & Grill, the liquor license calls it Tacos Santana. The court defers to the liquor board's determination. See License No. 412775.

3. While plaintiff's complaint is taken as true, plaintiff has not alleged *how* the Program was broadcast, only that it was. Accordingly, this inference does not conflict with plaintiff's complaint.